IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| LUPING QU,<br><br>    Plaintiff,<br><br>V.<br><br>NORTH CAROLINA STATE UNIVERSITY RALEIGH, a constituent institution of THE UNIVERSITY OF NORTH CAROLINA STATE UNIVERSITY,<br><br>    Defendant. | No: 5:24-CV-00620 |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

Defendant North Carolina State University ("NC State" or "Defendant") hereby submits this Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Memo") (DE 13).

In the Pl. Memo, Plaintiff asserts that his claims are not time-barred and that he has sufficiently pleaded facts that plausibly show that Defendant intentionally discriminated against him based on his race or ethnicity by alleging disparate treatment compared to similarly situated coworkers or by alleging other circumstantial evidence. However, Plaintiff's assertions are flawed. First, Plaintiff may not recover back pay for periods before March 3, 2021. Second, the Complaint's allegation that Plaintiff and his purported

1

comparators have the same job title and work in the same department does not plausibly allege that Plaintiff's purported comparators are similarly situated or that intentional discriminatory conduct may be inferred from other alleged circumstances.

I. **CLAIMS FOR BACK PAY BEFORE MARCH 3, 2021, ARE TIME-BARRED.**

According to Plaintiff, "Defendant's argument for dismissal for failure to exhaust administrative remedies is based exclusively on the purported lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1)," and, because "the Supreme Court has specifically held that Title VII's charge-filing instruction is not jurisdictional, but rather procedural in nature," Defendant's motion to dismiss should be denied. (Pl. Memo, p 8). Plaintiff has misread Defendant's motion and supporting memorandum. See DE 10; DE 11 at pp 7-8 (stating that dismissal is appropriate under Rule 12(b)(1) if the party failed to exhaust administrative remedies by not filing with the EEOC at all and under Rule 12(b)(6) if the party failed to file with the EEOC in a timely manner). While Defendant acknowledges that Plaintiff filed a charge with the EEOC on March 3, 2023, Defendant seeks dismissal of Plaintiff's claim under Rule 12(b)(6) to the extent he seeks to assert claims for alleged discriminatory acts that occurred before September 2022 (i.e., occurred more than 180 days before he filed his EEOC charge in March 2023). See *Morris v.*

*SAS Inst. Inc.*, 2019 U.S. Dist. LEXIS 80738, at *8 (EDNC 2019) (dismissing claim where plaintiff did not file an EEOC charge within 180 days of any alleged incident of harassment because harassment claim was no longer actionable); 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.").

Plaintiff's response to Defendant's motion to dismiss implies that he may seek to recover for acts that occurred before September 2022 that are no longer actionable. Plaintiff asserts that his EEOC charge "put Defendant on notice that his complaint for pay discrimination had been ongoing ***since at least 2017***." (Pl. Memo, p 10) (emphasis added).[1] Similarly, in his Complaint, Plaintiff alleges, "After learning about pay disparities, Qu began asking his supervisor for a promotion in 2019."[2] (Compl. ¶ 21). Defendant's motion to dismiss is intended to address discrimination that Plaintiff alleges began before September 2022.

---

[1] Plaintiff's EEOC charge says, "[s]ince 2017 I have been performing at a level well above my current pay rate," that he has never been promoted, and that he "continued to be discriminated against." (Compl. Ex. A).

[2] Notably, the allegations in the Complaint contradict that Plaintiff was aware of any alleged disparities in 2019, relying on alleged disparities that existed in March 2023. (Compl. ¶¶ 28, 34).

3

In the Pl. Memo, Plaintiff also asserts that the Ledbetter Act measures the 180-day filing requirement from the date of each paycheck, not from the original discriminatory decision. (Pl. Memo, p 11). Plaintiff further asserts that under the Ledbetter Act, Plaintiff can recover back pay for discrimination that occurred two years before filing the EEOC charge. (Pl. Memo, p 12). Defendant does not dispute that, under the Ledbetter Act, the 180-day clock to file a claim for discriminatory pay can run from each time an employee is paid and not just from the time of the alleged initial discriminatory pay decision. 42 U.S.C. 2000e-3. And, Title VII provides for a two-year lookback from the date of filing of an EEOC discrimination charge to recover back pay. 42 U.S.C. 2000e-5(g)(1). Here, Plaintiff filed his EEOC charge on March 3, 2023. Therefore, the lookback period only extends to March 3, 2021–and not "for at least three years prior to filing of the charge," as Plaintiff seeks in his Prayer for Relief. (Compl., p 10).

To the extent the Complaint raises claims for discriminatory acts before September 2022 or seeks recovery of back pay before March 3, 2021, it fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).

## II. PLAINTIFF'S ALLEGATIONS OF DISCRIMINATION FAIL TO CROSS THE LINE FROM CONCEIVABLE TO PLAUSIBLE.

In his Pl. Memo, Plaintiff argues that he alleged sufficient facts to plausibly show discrimination either through the use of comparators or by otherwise "alleging facts sufficient to create an inference of an 'unlawfully discriminatory motive.'" (Pl. Memo, pp 12-18). However, Plaintiff's allegations of racial or ethnic discrimination are too feeble to avoid dismissal.

To survive a motion to dismiss, "a complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claim 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F3d 250, 256 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)). Plaintiff's Complaint falls short of this standard. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff's allegations, at most, show only

5

Case 5:24-cv-00620-D-RN      Document 15      Filed 02/10/25      Page 5 of 13

a possibility that Plaintiff is entitled to relief. Such a showing is insufficient to avoid dismissal. *Id.*

Conclusory allegations unsupported by factual allegations are not entitled to an assumption of truth. *Id.* at 679. For example, a plaintiff's assertion of an unlawful agreement is a "legal conclusion" and, therefore, not entitled to the assumption of truth. *Twombly*, 550 U.S. at 555. Here, Plaintiff's assertion that Defendant had a "discriminatory motive" is likewise not entitled to the presumption of truth. (Pl. Memo, p 16). To be so considered, the conclusory allegation must be supported by factual allegations that raise a plausible suggestion of unlawful intentional discrimination. *Id.*

Plaintiff acknowledges that to avoid dismissal, he must plausibly allege that he (1) was a member of a protected class; (2) was paid less than an employee outside the class; and (3) the higher-paid employee was performing a substantially similar job." (Pl. Memo p. 14, quoting *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F. Supp. 2d 637. 644 (D. Md. 2004)); *cf Coleman v. Md. Ct. of Appeals.*, 626 F.3d 187, 190 (4th Cir. 2010), *aff. sub nom.*, 566 U.S. 30 (2012) (To state a discrimination claim under Title VII, the Plaintiff must allege facts to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.").

6

Nevertheless, he failed to allege facts that plausibly demonstrate that his alleged comparators performed a substantially similar job.[3]

Plaintiff asserts that he alleged sufficient facts to plausibly show discrimination through comparators or by otherwise "alleging facts sufficient to create an inference of an 'unlawfully discriminatory motive.'" (Pl. Memo pp 16). The assertion is incorrect for several reasons.

First, Plaintiff's allegations are insufficient to qualify his comparators as "similarly situated." Comparators must be similar in "all relevant respects." *Cowgill v. First Data Techs., Inc.,* 41 F.4th 370, 382 (4th Cir. 2022). "A plaintiff must plead facts[4] showing that the comparators 'dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in

---

[3] For this motion, Defendant will not dispute that Plaintiff is a member of a protected class or that he was paid less than other employees. Defendant otherwise reasserts its contention that Plaintiff has failed to show that he was subjected to intentional discrimination or treated differently from others outside the class with whom he is similarly situated based on discriminatory motives.

[4] Plaintiff argues that the "present issue [is] a pleading issue." Indeed, the Fourth Circuit and district courts within the Fourth Circuit have dismissed cases where the complaint "fails to establish a plausible basis for believing [purported comparators] were actually similarly situated or that race was the true basis for [the adverse employment action]." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010); see also *Lawrence v. Global Linguist Solutions LLC*, 2013 U.S. Dist. LEXIS 178817, at *11 (ED Va. 2013) (dismissing the complaint where "Plaintiff fails to plead any facts on which to find that the individuals she references in her Complaint are 'similarly situated' to her for purposes of her disparate treatment claim.").

7

the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Agbati v. Virginia Dep't of Agric. & Consumer Servs.*, 2022 U.S. Dist. LEXIS 182350, at *11-12 (ED Va. 2022) ( Lawrence v. Global Linguist Sols LLC, No. 1:13cv1207, 2013 U.S. Dist. LEXIS 178817, 2013 WL 6729266, at *4 (E.D. Va. Dec. 19, 2013) (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam))). As a sister court has noted, the plaintiff "must identify a comparator and must plead sufficient facts to render his claim plausible that higher-paid white employees 'were actually similarly situated.'" *Agbati*. at *13 n.8.

Here, the Complaint does not allege that Plaintiff and his purported comparators dealt with the same supervisor, were subject to the same standards, or were engaged in the same conduct. Plaintiff only alleges the identity of their job title as "research specialist" and that he and the comparators are in the same department. (Compl. ¶ 28; Pl. Memo, pp 15-16). In fact, his allegations indicate that he and at least one comparator (Blomquist) were working on different research and different projects. See Compl. ¶ 35 (alleging that Blomquist's salary came from "research funds that Qu [not Blomquist] had generated or from the projects that Qu [not Blomquist] had worked on.").

8

Another relevant consideration in the context of academic research is the source of funding for the work Plaintiff and the alleged comparators conduct. Plaintiff emphasizes two funding sources for his position ("hard" and "soft" money) but fails to identify the source of funding for three of the alleged comparators' salaries and alleges explicitly that one comparator (Blomquist) was "supported entirely from research funds or 'soft money.'" (Compl. ¶ 33). Thus, by his own allegations, Plaintiff distinguishes himself from one of the purported comparators. For the others, no inferences can be drawn regarding the similarity of funding sources.

Finally, Plaintiff asserts that he has presented sufficient evidence of discriminatory motive without using comparators, arguing that he had been told for years that there was no funding but that "Defendant discovered sufficient 'funding'" within 30 days after he filed his EEOC charge. (Pl. Memo p 16). Indeed, in his Memorandum, Plaintiff categorically states that Defendant's alleged "no funding" reason for not giving him a raise was "false." (Pl. Memo p. 17, referencing Compl. ¶¶ 27-28). However, he overstates this assertion. In his Complaint, he merely alleged that funds existed "on information and belief." (Compl. ¶ 27). The Complaint contains no factual allegations to back up this speculative assertion. The unsupported allegation does not plausibly lead to an inference of racial or ethnic discrimination or discriminatory intent.

9

Plaintiff cites no authority for the proposition that allegations that the plaintiff received a raise after an EEOC filing are sufficient to plausibly infer that the defendant had a discriminatory motive. Plaintiff's attempt to attribute the raise on the heels of the EEOC complaint to racial discrimination is pure conjecture and speculation. Likewise, Plaintiff's conclusory statement that "[t]here were no other legitimate reasons to pay Qu any differently," does not raise a plausible suggestion of unlawful intentional discrimination. The mere possibility of racial discrimination is insufficient to withstand dismissal. *Batchelor v. City of Wilson*, No. 5:23-CV-623-D, 2024 U.S. Dist. Lexis 158229 at *15 (E.D.N.C. September 4, 2024) (referencing *Iqbal*, 556 U.S. at 676).

## CONCLUSION

For the reasons set forth herein and in its Memorandum in Support of the Motion to Dismiss, Defendant respectfully requests that the Court grant the Motion and dismiss this action with prejudice.

This 10th day of February, 2025.

**JEFF JACKSON**
**ATTORNEY GENERAL**

/s/ Jeremy D. Lindsley

Jeremy D. Lindsley
Assistant Attorney General
N.C. State Bar No. 26235
jlindsley@ncdoj.gov

/s/ Adrina G. Bass
Special Deputy Attorney General
N.C. State Bar No. 39521
abass@ncdoj.gov

North Carolina Department of Justice
P.O. Box 629
Raleigh, N.C. 27602
T: 919-716-6815
F: 919-716-6764

*Attorneys for NC State*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing Reply does not exceed 3,250 words, including the body of the brief, headings and footnotes in compliance with Local Rule 7.2(f)(3). The undersigned relies on the word count feature of the word processing software used to prepare this memorandum in making this certification.

This 10th day of February, 2025.

                                               /s/ Jeremy D. Lindsley
                                               Jeremy D. Lindsley
                                               Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Reply** with the Clerk of Court using the CM/ECF system, and served Plaintiff by depositing the same into the US Mail, first-class postage prepaid, addressed as follows:

J. Heydt Philbeck
hphilbeck@bdixon.com

Bailey & Dixon, LLP
434 Fayetteville St., Ste 2500
Raleigh, N.C. 27601

*Attorneys for the Plaintiff*

This 10th day of February, 2025.

    /s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General